**SIGNED THIS: May 06, 2011**

                                              _____
                                                      **MARY P. GORMAN**
                                              **UNITED STATES BANKRUPTCY JUDGE**
_____

```
                    UNITED STATES BANKRUPTCY COURT

                      CENTRAL DISTRICT OF ILLINOIS

     In Re                          )
                                    )     In Bankruptcy
     AMY SUE DELANEY,                )
                                    )     Case No. 10-73750
             Debtor.                )
```

**O P I N I O N**

Before the Court is a reaffirmation agreement entered into between the Debtor and First National Bank of South Jacksonville, and the issue for decision is whether the Debtor has rebutted the presumption of undue hardship which arises under the reaffirmation agreement. The reaffirmation agreement, on its face, purports to obligate the Debtor to repay over $84,000 of apparently unsecured debt. After two hearings at which the Debtor appeared with three different attorneys from Ostling & Associates, this Court must conclude that the Debtor failed to rebut the presumption and that

-1-

the reaffirmation agreement is not enforceable. Further, this Court must admonish Debtor's attorneys that the quality of their representation of the Debtor in this case fell well short of the minimum standards for competence.

## Factual and Procedural Background

Amy Sue Delaney ("Debtor") filed her voluntary petition under Chapter 7 on December 16, 2010. Her petition was filed by Attorney Larry Spears of Ostling & Associates.

On her schedules, Debtor listed ownership of a 2003 GMC Yukon vehicle which she valued at $9000. She also disclosed that First National Bank of South Jacksonville ("FNB") was owed approximately $6000 on a debt secured by the Yukon. Debtor's monthly auto loan payment was listed on her schedules as $348. Debtor scheduled her gross monthly income as $5063.67, her net monthly income as $2397.07 and her monthly expenses as $2920.11. Debtor timely filed her Statement of Intention indicating her intent to reaffirm her debt with FNB secured by her vehicle. She scheduled no other secured creditors and no other obligations to FNB.

On March 2, 2011, Attorney Spears filed the reaffirmation agreement entered into between the Debtor and FNB. The reaffirmation agreement states that the Debtor agrees to repay FNB $84,977.73 plus interest with monthly payments of $1222.11 due beginning February 1, 2011. The reaffirmation agreement, which

consists of a scant two pages, discloses no collateral for the debt, contains none of the disclosures required by current law, and does not include any information about the Debtor's income, expenses, or ability to make payments on the reaffirmed debt. The reaffirmation agreement is signed by the Debtor and a representative of FNB. The reaffirmation agreement also includes a certification signed by Attorney Spears which represents, *inter alia*, that he has fully informed the Debtor as to her rights, duties, and obligations regarding the reaffirmation agreement.

The reaffirmation agreement was filed with the cover sheet required by the Rules. *See* Fed.R.Bankr.P. 4008(a). The cover sheet, also signed by Attorney Spears, includes the limited information about the debt which was actually set forth in the reaffirmation agreement, but also states that the collateral for the reaffirmed debt is the Debtor's 2003 GMC Yukon. In the section of the cover sheet which requests a statement of Debtor's income and expenses "as stated on the reaffirmation agreement", her income is shown as $2397.07 and her expenses are shown as $1174.96. On the line which asks how much of the monthly payment on the reaffirmed debt is not included in the monthly expenses listed, "$0" is entered.

Because the reaffirmation agreement itself contains no information about the Debtor's ability to pay the reaffirmed debt, and the cover sheet contains the mathematically impossible

assertion that the Debtor's monthly expenses of $1174.96 include a $1222.11 payment to FNB, a presumption of undue hardship arises. Accordingly, the reaffirmation agreement was set for hearing on March 29, 2011. The notice of hearing contained this Court's standard language stating that the hearing was scheduled because a presumption of undue hardship had arisen with respect to the reaffirmation agreement, and advising that the presumption might have arisen due to missing or incomplete information or the existence of mathematical errors in the documents. The form notice urges attorneys and parties to review reaffirmation agreements for "accuracy and completeness" prior to scheduled hearings and to file amendments and corrections as needed. Nothing additional has been filed on behalf of the Debtor here.

At the March 29th hearing, the Debtor appeared with Attorney Lindsay Shull of Ostling & Associates. When the Court inquired about why the Debtor would want to reaffirm an $84,000 debt just to keep a 2003 vehicle valued at $9000, Attorney Shull stated that she "had not even noticed" the amounts involved in the reaffirmation agreement. The Debtor stated that she had not intended to make any such reaffirmation agreement and confirmed that her monthly auto loan payment was $348, not $1222.11. The Debtor stated that the $84,000 related to a separate consolidation loan she had with FNB that her father had co-signed and for which he had pledged his home as collateral. When asked if the $84,000 loan had been scheduled,

-4-

the Debtor said that it was in her "papers", but Attorney Shull admitted that the debt was not scheduled and also that the Debtor's father had not been listed as a co-debtor. The Debtor stated that, when she signed the reaffirmation agreement, she "thought something was wrong." Attorney Shull asked to have the matter set over so that Attorney Spears could appear. The Court entered an order continuing the matter to April 19, 2011, and requiring both Attorney Larry Spears and Attorney Lars Eric Ostling to appear with the Debtor at the continued hearing.

At the April 19th hearing, Attorney Spears and Attorney Ostling appeared with the Debtor. Attorney Spears began by stating that he had reviewed the file and that there was a house which should have been listed as collateral on the cover sheet. He acknowledged that he also should have checked the box on the cover sheet indicating that a presumption of undue hardship had arisen. He was unsure why he had not done that. Attorney Spears did not explain why he thought it was proper to include information on the cover sheet which was not in the actual reaffirmation agreement. When the Court asked Attorney Spears whether the $84,000 was even scheduled, he said that he did not know.

At that point, Attorney Ostling interceded and admitted that the $84,000 debt was not scheduled. He went on to say that the debt related to a loan that the Debtor had taken out at FNB with her father and for which the father's house was pledged as

-5-

collateral.  Attorney Ostling stated that he believed that Mr. Spears' intent in signing and presenting the reaffirmation agreement was to have the Court tell the Debtor that she should not reaffirm on the $84,000 debt.  Mr. Ostling went on to say that they did not want the Debtor's father to think that she was letting him down by not reaffirming the FNB debt and that, if her attorneys advised her not to sign, she would look bad to her father.  Mr. Ostling did not explain why, if such a savvy plot had been devised, neither of the first two attorneys to speak on behalf of the Debtor - Attorney Shull and Attorney Spears - were aware of it.

Mr. Ostling asserted that the problems here were isolated and claimed that his law firm consisting of 13 lawyers and 50 other staff members generally does excellent legal work.  Mr. Ostling did, however, admit to receiving and reading several recent orders from this Court outlining problems with the reaffirmation agreement practices of his office.[1]  He acknowledged, although obviously

---

[1] On June 2, 2010, this Court entered an order in the case of Bonnie L. Hill (#09-73772) finding that the presumption of undue hardship raised by a reaffirmation agreement had not been rebutted and outlining a number of problems involved in the filing and presentation of the reaffirmation agreement.  In that order, this Court stated, "Larry Spears and the Ostling law firm are admonished that their representation of the Debtor in this case failed to meet even the most minimal standards required for professional competency."  On February 14, 2011, this Court entered an order in the case of Randy Carl Hufford and Anne Elizabeth Hufford (#10-73198) finding that the presumption of undue hardship raised by a reaffirmation agreement had not been rebutted and detailing a series of missteps made by Attorney Spears and other Ostling & Associates attorneys in the filing and presentation of the reaffirmation agreement.  In that order, this Court said, "Even a

reluctantly, that improvements need to be made in his office.

Before concluding, the Court inquired of Mr. Spears whether he had actually advised the Debtor of her rights, duties, and obligations regarding the FNB reaffirmation agreement as he had certified that he had done.  Mr. Spears stated that he had not, but that a legal assistant at Ostling & Associates would have advised the Debtor regarding the reaffirmation agreement.  He admitted that the legal assistant advising the Debtor might well have been the same assistant who did not catch the fact that the reaffirmation agreement called for the Debtor to reaffirm an unscheduled $84,000 debt and who completed the cover sheet by adding the 2003 Yukon as collateral notwithstanding the absence of any collateral description in the actual reaffirmation agreement.

The Debtor's attorneys offered no evidence to support a finding that the Debtor could actually make the $1222.11 monthly payment to FNB called for by the reaffirmation agreement.  To the contrary, as set forth above, Mr. Ostling asserted that the filing of the document had actually been just a ruse to mislead the Debtor's father.  The Court ended the hearing by stating that it would find that the reaffirmation agreement between the Debtor and FNB was unenforceable because it did not comply with the

---

cursory review of the above case history suggests that the practice of law at the Ostling & Associates firm falls well short of the required standards for the competent and ethical practice of law."

requirements of statute and because the Debtor had not rebutted the presumption of undue hardship.

## Jurisdiction

This Court has jurisdiction over the issues before it. *See* 28 U.S.C. §1334. Resolving issues regarding the enforceability of reaffirmation agreements are core proceedings. *See* 28 U.S.C. §157 (b)(2)(A),(I), and (O).

## Legal Analysis

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") made significant changes to the Code regarding reaffirmation agreements. In order for a reaffirmation agreement to be enforceable, detailed disclosures regarding the reaffirmed debt and the credit terms involved must be made. 11 U.S.C. §524(c)(2), (k). Further, a reaffirmation agreement must contain specific information including a statement by a debtor in support of the reaffirmation agreement which sets forth the debtor's income and expenses and establishes the debtor's ability to make payment on the reaffirmed debt. 11 U.S.C. §524(k)(1), (6)(A); Fed.R.Bankr.P. 4008(b). When a reaffirmation agreement discloses that a debtor's monthly expenses exceed monthly income, a presumption of undue hardship arises and, unless the debtor is able to rebut the presumption by additional written submissions, a

-8-

hearing must be held to determine whether the presumption can be rebutted and the agreement made enforceable. 11 U.S.C. §524(m)(1).

Here, the reaffirmation agreement, apparently prepared by FNB, is on a sorely out of date form and wholly fails to comply with the BAPCPA mandates. It contains none of the required disclosures and the Debtor's statement in support is entirely missing. The reaffirmation agreement between the Debtor and FNB is, therefore, unenforceable as a matter of law. 11 U.S.C. §524(c)(2).

Unfortunately, neither Attorney Spears nor anyone else at Ostling & Associates understood that the reaffirmation agreement tendered by FNB was out of date and unenforceable. Likewise, neither Attorney Spears nor anyone else at Ostling & Associates noticed that the reaffirmation agreement referred to an $84,000 debt which was not scheduled by the Debtor. Instead, Attorney Spears and his clerical staff completed the cover sheet with inaccurate information, filed the documents, and sent Attorney Shull to court to get it all approved.

A debtor filing bankruptcy expects to "reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). A debtor will only achieve those goals

and get a "fresh start" if prudent decisions are made about reaffirming debts. Obligating oneself to continue to pay debts that are otherwise dischargeable must be done with caution and only after fully exploring the consequences of the reaffirmation. The current Code provisions obviously contemplate that a debtor's attorney will play a significant role in making sure that a debtor considering reaffirming a debt understands his or her rights, duties, and obligations and makes an informed judgment about whether to enter into the reaffirmation agreement. See, *In re Collmar*, 417 B.R. 920, 923 (Bankr. N.D. Ind. 2009); *In re Isom*, 2007 WL 2110318 at *3 (Bankr E.D. Va. 2007); 11 U.S.C. §524(c)(3), (k)(5). An attorney who signs a certification attached to a reaffirmation agreement is making a direct representation to the court and the creditor involved that the attorney actually advised the debtor as required by the Code. 11 U.S.C. §524(c)(3). An attorney may be sanctioned for signing and filing a document that contains allegations of fact that the attorney knows are not true. Fed.R.Bankr.P. 9011(b)(3),(c).

Ostling & Associates' process for the reviewing, signing, and filing of reaffirmation agreements involves the use of unsupervised and inadequately trained clerical staff. Such staff members are apparently not trained on the fundamentals of properly drafted reaffirmation agreements. They also are obviously not directed to compare the terms of proposed reaffirmation agreements with

information already contained in a debtor's schedules about the debt being reaffirmed. They clearly do not have sufficient knowledge of financial matters to recognize glaring mistakes such as here where the Debtor appeared to be signing up to pay $84,000 for a 2003 vehicle. They make mathematical errors such as representing that the Debtor here had total monthly expenses of $1174.96 which included a monthly payment of $1222.11 to FNB. The staff inadequacies are compounded by Attorney Spears' apparent practice of relying exclusively on the staff to advise debtors while he "robo-signs" the agreements, and by Attorney Ostling's broad denial that anything is amiss in his office.

The Illinois Rules of Professional Conduct are applicable to these proceedings because they have been adopted by the District Court of the Central District of Illinois to govern all practice in Central District federal courts. See, *CDIL-LR 83.6(D)*. Rule 1.1 requires that lawyers provide competent representation and defines competent representation as requiring legal knowledge, skill, thoroughness and preparation. See, *ILCS S.Ct. Rules of Prof. Conduct, RPC Rule 1.1*. Rule 5.3 requires owners of law firms and attorneys who act in supervisory positions to supervise non-lawyer employees to make sure that such employees' conduct complies with ethical and professional standards. See, *ILCS S.Ct. Rules of Prof. Conduct, RPC Rule 5.3.* If an attorney is not capable or is unwilling to perform the duties necessary to adequately represent

-11-

a client, that attorney should not accept representation of the client.  See, *In re Minardi*, 399 B.R. 841, 850 (Bankr. N.D. Okla. 2009).

If Attorney Ostling and Attorney Spears want to meet their ethical and professional obligations - and this Court must assume that they do - they must develop new procedures for Ostling & Associates immediately to ensure that what occurred here does not happen again.  Although Attorney Spears is responsible for his own conduct and that of the non-lawyers working at his direction, it is clear that Attorney Ostling is primarily responsible for creating the business model that led to the problems here.  He sets the overall guidelines for the training and supervision of staff and the interaction among attorneys and clerical staff.  Attorney Ostling must change his business model dramatically to meet the minimum requirements of ethical and professional conduct required to continue to practice before this Court.  He must ensure that clients of his firm are represented with skill and knowledge and that Ostling & Associates attorneys are thorough and prepared.  He must ensure that his clerical staff is adequately trained and supervised so they support the attorneys in providing competent, professional representation.  If Attorney Ostling is unable or unwilling to do what is necessary to improve his firm, he must

cease accepting representation of clients.[2] *Id.*

Some of the changes that must occur at Ostling & Associates with respect to reaffirmation practice are clear. An Ostling & Associates attorney must meet directly with every client signing a reaffirmation agreement to review the agreement. Any attorney signing a reaffirmation certification must do so based on his or her own knowledge and not based on an expectation that an untrained, unsupervised clerical staff member will take care of providing the appropriate legal advice. Additionally, when a presumption of undue hardship arises and a hearing is set, the attorney appearing with the debtor must have reviewed the reaffirmation agreement and must be prepared to address the information upon which the debtor is relying in attempting to rebut the presumption of undue hardship.

Future improvements in procedures at Ostling & Associates will not help the Debtor here. Her reaffirmation is unenforceable for the reasons set forth above. An order will be entered accordingly. Although she suggested at the March 29th hearing that her auto loan with FNB was a separate transaction, no new reaffirmation agreement

---

[2] This is not the first notice to Attorney Ostling of the serious problems at his firm regarding reaffirmation agreements. In an order entered February 14, 2011, in the case of Randy Carl Hufford and Anne Elizabeth Hufford (#10-73198), this Court specifically identified the lack of proper legal review of reaffirmation documents as an issue of concern. This Court then stated: "Mr. Ostling bears primary responsibility for ensuring that the business model established for his firm allows and encourages all attorneys in the firm to practice in a competent and ethical manner."

has been filed.  Further, no extension of time to negotiate a new agreement has been requested.  If all other requirements for discharge have been met, then the Debtor's discharge must issue forthwith and the time for filing additional reaffirmation agreements will end.  11 U.S.C. §524(c)(1).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###